# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE GREW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 2022 |
| | ) | |
| | ) | |
| KMART CORPORATION OF | ) | |
| ILLINOIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Kmart Corporation's ("Kmart")
motion for summary judgment and motion to strike, Plaintiff Nicole Grew's
("Grew") motion to strike and deem admitted portions of Kmart's response to
Grew's statement of additional facts, and Grew's motion to strike the affidavit of
Dale Kopp ("Kopp"). For the reasons stated below, we deny Kmart's motion to
strike, deny as moot Grew's motion to strike portions of Kmart's response to her
statement of additional facts, and grant Grew's motion to strike portions of Kopp's
affidavit. We also grant Kmart's motion for summary judgment in part and deny it
in part.

1

# BACKGROUND

Grew alleges that she was hired by Kmart in September 2000, as a Customer Service Supervisor. Grew claims that during her employment with Kmart, she "performed satisfactorily in all aspects of her job" and she "was trained in several departments throughout the store." (Compl. Par. 9, 10) According to Grew, in August 2003, she notified Kmart that she was pregnant. Grew claims that on February 5, 2004, at 10:00 a.m., she requested maternity leave. Grew also claims that later in the afternoon of February 5, 2004, she was terminated by Kmart as part of a store-wide reduction in force ("RIF"). Grew alleges that there were other employees in her department with less seniority who were not terminated, and that other employees were offered the option of reducing their work hours in lieu of termination. Grew also claims that in June 2004, she applied for a part-time position with Kmart, but her application was rejected.

Grew filed the instant action in April 2005, alleging a claim of discrimination in violation of the Family Medial Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Count I), a claim of retaliation under the FMLA (Count II), a claim of sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e *et seq.* (Count III), a claim of retaliatory discharge in violation of Title VII (Count IV), and a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et. seq.* (Count V) . On November 7, 2005, Kmart filed a motion for summary judgment on all counts.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the evidence

as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

## DISCUSSION

I. Motions to Strike

Kmart has filed a motion to strike a portion of the affidavit of Scott Peters ("Peters"), in which Peters states that "[a]bout one week after Nicole was terminated 'Cookie,' [sic] and Anna were both working as full time, or close to full time service desk supervisors at the Joliet K-Mart." (Peters. Aff. Par. 17). Federal Rule of Civil Procedure 56(e) states that in regard to motions for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge . . . ." Fed. R. Civ. Pro. 56(e). Kmart argues that Peters, who was a part-time service desk supervisor, "provides no reasonably evident basis for concluding that a part-time employee . . . would have personal knowledge of the alleged 'full-time' hours of another employee." (D's Mot. Strike 2-3). Peters' affidavit, however, states that he "often worked directly with [Anna] on several occasions" and that he had been asked to train Cookie. (Peters. Aff. Par. 3, 15). Therefore, it is reasonable that Peters would have gained personal knowledge of Anna's and Cookie's work schedules through these encounters. Accordingly, Kmart's motion to strike is denied.

Grew has filed a motion to strike and deem admitted portions of Kmart's response to her Local Rule 56.1 statement of additional facts, and a motion to strike

4

portions of the supplemental affidavit of Kopp. In regard to Grew's statement of facts, Grew claims that Kmart's "responses to the majority of the paragraphs of Plaintiff's Statement of Additional Facts are neither admissions nor denials of the statements, and as such" fail to comport with Local Rule 56.1. (P's Mot. Strike 3). The court, however, has considered all of the statements of fact presented in relation to the motion for summary judgment in light of Local Rule 56.1. Accordingly, Grew's motion to strike portions of Kmart's response to her statement of additional facts is denied as moot.

In regard to Grew's motion to strike portions of Kopp's supplemental affidavit, Grew is seeking to strike paragraphs 5 and 6 of the supplemental affidavit, in which Kopp discusses the time records for Cookie, a Kmart employee. Specifically, Grew argues that Kopp's summary of Cookie's work hours does not satisfy the best evidence rule. Federal Rule of Evidence 1002, also known as the best evidence rule, states that"[t]o prove the content of a writing . . . the original writing . . . is required . . . ." Fed. R. Evid. 1002. In his affidavit, Kopp is not testifying to his own personal knowledge of Cookie's work hours. Instead, Kopp's affidavit discusses the exact information allegedly contained in the Kmart records. Given that Kmart has not produced the work records in question, nor has it provided the court with a reason for failing to do so, Grew's motion to strike paragraphs 5 and 6 of Kopp's supplemental affidavit is granted.

## II. Motion for Summary Judgment

Kmart has moved for summary judgment on all counts of the complaint.

### A. Discrimination and Retaliation Under the FMLA (Counts I and II)

In Counts I and II of the complaint, Grew alleges that she was discriminated and retaliated against by Kmart in violation of the FMLA. In addition to the provisions of the FMLA that provide substantive rights to employees, the FMLA "makes it 'unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'" *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005)(quoting 29 U.S.C. § 2615(a)(2)). The FMLA also "makes it unlawful for any employer to 'discharge' or 'discriminate' against anyone for taking part in proceedings or inquiries under FMLA." *Id.* (quoting 29 U.S.C. § 2615(b)). The Seventh Circuit has stated that FMLA claims brought under either discrimination or retaliation theories "require[] proof of discriminatory or retaliatory intent . . . ." *Id.* To survive a motion for summary judgment, a plaintiff may proceed under either direct or indirect methods of proof. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).

Under the direct method of proof, a plaintiff may rely on either a direct admission by a decision maker that shows "his actions were based upon the prohibited animus" or circumstantial evidence that "allows a jury to infer intentional

6

discrimination by the decision-maker." *Id.* (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir.2003))(internal quotations removed). In the instant action, Grew does not argue that she has direct evidence to support Counts I and II. Therefore, this case falls under the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell Douglas* Approach"). To prevail under this indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination or retaliation in violation of the FMLA. The Seventh Circuit has stated that to establish a *prima facie* case of pregnancy discrimination in a RIF case, a plaintiff must show that: "1. She was pregnant (a member of a protected class) and her employer knew she was pregnant, 2. She was performing her duties satisfactorily, 3. She was discharged or demoted, and 4. Similarly situated employees not in the protected class were treated more favorably." *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1154-55 (7th Cir. 1997). Once the plaintiff has established a prima facie case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999). If the defendant is able to rebut the prima facie case, "[t]he plaintiff, then, has the opportunity to demonstrate that 'the proffered reason was not the true reason for the employment decision' and that the employee's participation in the protected activity was, in fact, the real reason for the employment action at issue." *Id.*(quoting *Texas Bureau of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

In the instant action, it is undisputed that Grew was pregnant when her employment was terminated. It is also undisputed that Grew notified Kmart's human resources department that she was pregnant in July or August 2003, that she notified her supervisor that she was pregnant, and that Kopp, the head store manager, and the other store managers were "aware of [her] pregnancy in February, 2004." (D's Resp. P's SAF Par. 26, 27, 31, 32). Therefore, Grew has met the first element of a *prima facie* case of discrimination and retaliation under the FMLA. Additionally, Grew has provided sufficient evidence for a reasonable trier of fact to find that she was performing her duties satisfactorily. It is undisputed that Grew received three employee reviews throughout her employment at Kmart. (D's Resp. P's SAF Par. 15). Kmart does not dispute that in Grew's last review, which occurred less than four months before she was terminated, she was rated as being one point away from "exceed[ing] expectations." (D's Resp. P's SAF Par. 19). Kmart also does not dispute that Grew "was meeting expectations" when she was fired. (D's Resp. P's SAF Par. 21). Finally, it is undisputed that Grew was terminated. Therefore, we find that Grew has met the first three elements of a *prima facie* case for FMLA discrimination and retaliation.

Kmart argues that Grew cannot meet the fourth element of a *prima facie* case for discrimination and retaliation because "Grew cannot show that 'only she and not any similarly situated employee who did not [engage in protected activity] was subjected to an adverse employment action.'" (Mot. 5)(citation omitted by Kmart).

This, however, is not the appropriate test to apply in RIF situations, such as that in the instant action. Instead, Grew must show that "[s]imilarly situated employees not in the protected class were treated more favorably" than she was when Kmart made its termination decisions. *Ilhardt*, 118 F.3d at 1154-55. It is undisputed that three full-time "Checkout Service Associates," including Grew, were considered for termination as a part of the RIF, and that one of these employees, Anna Binkley ("Binkley"), was not terminated. (P's Resp. D's SF Par. 48, 58). It is also undisputed that Grew and Binkey had similar jobs and received similar rankings from the Kmart management prior to Grew's termination. (D's Resp. P's SAF Par. 56-57). In fact, Grew alleges that Kmart had received several complaints about Binkey prior to the RIF decision, and Kmart does not dispute this allegation. (D's Resp. P's SAF Par. 58). Kmart also does not dispute that Grew was the only pregnant Kmart employee at the time of the RIF. (D's Resp. P's SAF Par. 65). Given these undisputed facts, a reasonable trier of fact could find that Grew has pointed to a similarly situated employee not in her protected class who received more favorable treatment in the RIF decision than Grew received. Accordingly, we find that Grew has established a *prima facie* case of discrimination and retaliation under the FMLA.

Since Grew has established a *prima facie* case of discrimination and retaliation under the FMLA, the burden shifts to Kmart to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *King*, 166 F.3d at

892. Kmart advances a number of arguments in support of its motion for summary judgment. First, Kmart argues that "[a] reduction in force is a legitimate, non-discriminatory reason for terminating an employee." (Mot. 10). Kmart also argues that Grew was chosen for termination because when evaluated under certain criteria, "she ranked second to last out of the seven full-time employees considered for elimination." (Mot. 10). A RIF is a legitimate reason for terminating an employee and Kmart has shown that Grew was terminated because of a RIF. In addition, Grew does not contest that Kmart ranked her second to last out of the three Checkout Service Associates whose positions were considered for termination under the RIF. (P's Resp. D's SF Par. 48-53). Therefore, Kmart has provided a sufficient non-discriminatory justification for terminating Grew.

The burden shifts to Grew to show that Kmart's justification for her termination was pretextual. *King*, 166 F.3d at 892 (quoting *Texas Bureau of Community Affairs*, 450 U.S. at 256). Grew contends that in her last employment review, which occurred less than four months before she was terminated, she was rated only one point away from "exceed[ing] expectations." (P's SAF Par. 19, 21). Kmart does not dispute this fact. (D's Resp. P's SAF Par. 19, 21). In addition, Grew contends that she received several promotions and raises during her employment at Kmart. (P's SAF Par. 3-14). Grew argues that she was a good employee, and states that "[m]anagement at Kmart would not promote a lousy employee," and that "[r]aises at Kmart are dictated by the level of an employee's

10

performance." (P's SAF Par. 3-14). Kmart has not disputed the above contentions by Grew. (D's Resp. P's SAF Par. 3-14). Kmart has also admitted in its response to Grew's statement of facts that the decision as to which employees to terminate was "subjective," and that the Human Resources department was not "asked to submit any personnel files to the store managers" prior to Kmart's decision to terminate Grew. (D's Resp. P's SAF Par. 50, 52). Taken as a whole, this undisputed evidence is sufficient for a reasonable trier of fact to find that Kmart's asserted reason for firing Grew, that she was ranked second to the lowest of the employees considered as a part of the RIF, was a pretextual explanation.

Kmart also argues in support of its motion for summary judgment that its "decision to terminate Grew was made before her request for maternity leave, precluding any claim that she was terminated because of that request as alleged in Counts I and II." (Mot. 2). In support of this contention, Kmart cites *Regan v. Natural Resources Group, Inc.*, 345 F.Supp.2d 1000 (D. Minn.2004). In *Regan,* the court found that "[b]ecause the decision to terminate Regan was made and communicated to Regan before he requested FMLA leave, Regan cannot establish a prima facie case of retaliation." *Id.* at 1010-11. The facts in *Regan*, however, are distinguishable from those in the instant action. In the instant action, Kmart's managers knew that Grew was pregnant long before she requested maternity leave. (D's Resp. P's SAF Par. 29, 31, 32, 35). Therefore, the reasoning behind *Regan* does not "doom" Grew's case, as Kmart argues in its motion for summary judgment.

(Mot. 3).

Similarly, Kmart states in its motion that "it is undisputed that none of the managers who participated in the decision to terminate [Grew's] position had any knowledge of her request for maternity leave . . . ." (Mot. 11). Kmart goes on to state that "[t]hus, they could not have based their termination decision on a factor of which they were unaware . . . ." (Mot. 11). This argument, however, holds no weight. First, Kmart has admitted that members of the store management, including the head store manager, knew that Grew was pregnant. (D's Resp. P's SAF Par. 26, 27, 29, 31, 32, 34, 35). Kmart also does not dispute that its managers were aware that Grew would require time off from work after her pregnancy to care for her baby. (D's Resp. P's SAF Par. 35, 36). A formal request for maternity leave by Grew was not the first notice that Kmart had of her pregnancy. Therefore, Kmart's argument that it "could not" have based its decision to terminate Grew on her request for maternity leave simply has no merit. Any reasonable employer would know that there is a very high probability that a full-time pregnant employee would in all likelihood request a period of maternity leave. Kmart's contention that Grew's termination was because of a RIF and that it terminated her the day before she requested maternity leave, in the face of Kmart's admitted prior knowledge of Grew's pregnancy, further strengthens Grew's claim that the reasons given for her termination were pretextual. *See King,* 166 F.3d at 894 (holding that "a suspicion of mendacity" is a basis for denying summary judgment in FMLA cases)(internal

12

citations omitted); *Clay v. Holy Cross Hospital*, 253 F.3d 1000, 1010 (7th Cir. 2001)(Woods, J., concurring)(expressing disbelief that an employer would not know that a woman was pregnant, when she was six to seven months into her pregnancy). Accordingly, we find that a reasonable trier of fact could find that Kmart's asserted reason for terminating Grew was pretextual and, thus, we deny Kmart's motion for summary judgment on Counts I and II.

### B. Discrimination Under Title VII (Count III)

Kmart has moved for summary judgment on Count III, in which Grew claims that Kmart discriminated against her in violation of Title VII when it terminated her employment and failed to rehire her on two occasions. Given that Grew does not point to sufficient evidence to proceed under the direct method of proof, as was the case with Grew's FMLA claims, our analysis here also proceeds under the *McDonnell Douglas* Approach, which "requires the plaintiff to make out a *prima facie* case of discrimination, but then shifts the burden of producing evidence of a legitimate non-discriminatory reason for the questioned employment action to the defendant." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000). In order to establish a *prima facie* case of discrimination in violation of Title VII in a RIF situation, a plaintiff must show that she was a member of a protected class, that she was performing her position satisfactorily, that she suffered an adverse employment action, and that "other, similarly situated employees who were not members of the

13

plaintiff's protected class were treated more favorably." *Id.* at 494.

In the instant action, it is undisputed that Grew was pregnant when she was terminated, which makes her a part of a protected class. *See* 42 U.S.C. § 2000e(k). It is also undisputed that Grew was terminated by Kmart, and that Kmart did not rehire her. Further, as discussed above, Grew has alleged sufficient facts for a reasonable trier of fact to find that she was performing her job satisfactorily, and that another similarly situated, non-pregnant employee was not terminated. Therefore, Grew has established a *prima facie* case for discrimination as it relates to her termination. In regard to Grew's claims of discrimination based on Kmart's failure to rehire her, Grew states that other employees were hired or promoted by Kmart after her termination and that she was "treated differently" than she had been when she had reapplied at Kmart in the past. (Resp. 10). Grew, however, has not alleged that a single similarly situated individual was rehired after the RIF. Further, Grew does not dispute that the two full-time employees who were terminated on the same day as Grew was terminated were not rehired by Kmart. (P's Resp. D's SF Par. 59, 60). Therefore, we find that Grew has not established a *prima facie* case of discrimination under Title VII as it relates to Kmart's failure to rehire Grew.

Since we have found that Grew has established a *prima facie* case of discrimination under Title VII in regard to her termination, Kmart bears the burden of showing that there is "a legitimate non-discriminatory reason" for her termination. *Bellaver*, 200 F.3d at 493. As with the FMLA claims in Counts I and II, Kmart

14

claims that Grew was terminated as part of a RIF, which is generally a sufficient non-discriminatory reason for an employee's termination. *See Paluck v. Gooding Rubber Co,* 221 F3d 1003, 1012-13 (7th Cir. 2000). However, as discussed above, Grew has shown that a reasonable trier of fact could find that her inclusion in the RIF was pretextual, and that she was actually terminated for discriminatory reasons. Thus, we deny Kmart's motion for summary judgment on Count III as to Grew's claim that she was terminated in violation of Title VII. We grant Kmart's motion for summary judgment on Count III as to Grew's claim that Kmart failed to rehire her.

### C. Retaliation Under Title VII (Count IV)

Kmart has moved for summary judgment on Grew's Title VII retaliation claim in Count IV. Under Title VII, an employee is protected "not just from certain forms of job discrimination, but from retaliation for complaining about the types of discrimination it prohibits." *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). As with a Title VII discrimination claim, a plaintiff may survive a motion for summary judgment on a retaliation claim by proceeding under either the direct method of proof or under the *McDonnell Douglas* indirect method of proof. *Id.* To establish a *prima facie* case under the *McDonell Douglas* Approach, a plaintiff mush show that "(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse

15

employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002)(citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640 (7th Cir. 2002)).

In the instant action, Grew argues that she can proceed under either the direct or indirect method of proof. Specifically, Grew argues that she "engaged in a protected activity by requesting FMLA leave, [that she] was subsequently terminated [and that] [t]his time nexus alone is circumstantial evidence enough to enable a jury to render a decision that [her] termination was in retaliation for engaging in protected activity." (Resp. 12). While we agree, as stated earlier in this opinion, that a reasonable jury could conclude that Grew was terminated in retaliation for exercising her rights under the FMLA, Grew has not even argued that she complained about discrimination prior to her termination, which is the crux of a Title VII retaliation claim. Therefore, we find that Grew cannot proceed on her Title VII retaliation claim under the direct method of proof.

Grew also attempts to proceed under the indirect method of proof by summarily claiming that she "further engaged in protected activity when she complained of the discriminatory action taken against her, and Kmart refused to rehire her twice, after she and her father complained several times to Defendant." (Resp. 12). This argument, however, is not sufficient to survive a motion for summary judgment. Grew does not specify the nature "discriminatory action taken

16

against her." Furthermore, Grew does not allege any basis upon which the court could find that there is a causal connection between phone calls made by her father to Kmart and Kmart's failure to rehire Grew. Accordingly, we find that Grew cannot proceed under the indirect method of proof on her Title VII retaliation claim. Therefore, based upon the foregoing we find that no reasonable trier of fact could find that Kmart retaliated against Grew in violation of Title VII and we grant Kmart's motion for summary judgment on Count IV.

### D. ERISA Violation (Count V)

Kmart has moved for summary judgment on Count V, in which Grew alleges an ERISA violation under 29 U.S.C. § 1140 ("Section 510"), which "prohibits employers from frustrating their employees' attainment or enjoyment of benefit rights." *Ameritech Ben. Plan Committee v. Communication Workers of America*, 220 F.3d 814, 824 (7th Cir. 2000). First, Kmart argues that "Grew's ERISA discrimination claim . . . must be dismissed for failure to allege exhaustion of her administrative remedies." (Mot. 12). The Seventh Circuit has stated that "[w]hile a requirement to exhaust internal plan remedies is not specifically written into ERISA, courts have held that exhaustion is ordinarily a useful prelude to a lawsuit." *Ames v. American Nat. Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999). The decision to require proof of exhaustion of administrative remedies falls with the district court. *Id.* In the instant action, Kmart does not describe in any way the administrative remedies

17

that Grew should have exhausted, and Kmart's employee handbook does not provide

any procedures for employees to contest ERISA violations. (P's Ex. J, 15-16).

Furthermore, Kmart does not dispute that Grew's father attempted to call Kmart to

discuss her termination, that no one returned his calls, and that Grew "never got a

response" when her father asked a "live person at Kmart's corporate offices" to

"look into" her termination. (D's Resp. P's SAF Par. 98-102). In support of

Kmart's motion for summary judgment on Grew's ERISA claim, Kmart has argued

that Grew did not exhaust her administrative remedies. However, Kmart has not

pointed to any procedures established by Kmart that Grew should have followed in

order to exhaust such administrative remedies. The undisputed facts also show that

Grew and her father made several phone calls to Kmart, which were unreturned.

Answering or returning these phone calls could have given Kmart an opportunity to

remedy any potential ERISA violations. Therefore, Kmart has not provided the

court with a basis for granting Kmart's motion for summary judgment on Grew's

ERISA claim.

Kmart also argues that Grew "has failed to demonstrate the requisite specific

intent" for her ERISA claim. (Rep. 12). Under Section 510, a plaintiff must "show

that the reason he was terminated was to interfere with his rights under ERISA."

*Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 576 (7th Cir. 1998). A plaintiff

may establish an ERISA violation using either the direct method of proof or the

*McDonnell Douglas* Approach. *Id.* To establish a *prima facie* case of a Section 510

violation under the *McDonnell Douglas* Approach, a plaintiff must show that she "'(1) belongs to the protected class; (2) was qualified for [her] job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate' or to prevent the use of benefits was present." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005)(quoting *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996)).

Because Grew does not point to any direct evidence of Kmart's intent to deprive her of benefits in violation of ERISA, Grew must therefore proceed under the indirect method of proof. In the instant action, it is undisputed that Grew was a full-time employee who was eligible for health insurance under Kmart's policies. We have also found above that Grew has shown that a reasonable trier of fact could find that she was qualified for her position. Therefore, Grew has met the first two elements of a *prima facie* case under Section 510. We also find that Grew has shown facts that could lead a reasonable trier of fact to find that she was terminated with the intent of depriving her of benefits in violation of ERISA. Specifically, it is undisputed that Grew was notified of her termination just hours after she requested maternity leave, and Kmart has admitted that members of the store management, including Kopp, knew that Grew was pregnant when her employment was terminated. (D's Resp. P's SAF Par. 26, 27, 29, 31, 32, 34, 35). Kmart also does not dispute that "Kopp was aware [Grew] would require some time off to cover and perhaps care for a baby" and that if Grew were to take maternity leave, Kmart

"would have had to increase a part-time person's hours, had someone fill in on the floor, or otherwise juggle the staff around." (D's Resp. P's SAF Par. 35, 36). It is undisputed that Kmart management based its decision as to which employees to terminate on "subjective[]" rankings. (D's Resp. P's SAF Par. 50). It is undisputed that Binkley, who was not pregnant in February 2004, was not terminated. (D's Resp. P's SAF Par. 57). Kmart also does not dispute that it received several complaints regarding Binkley's work performance, and that Binkley and Grew received similar rankings prior to Grew's termination. (D's Resp. P's SAF Par. 57-59). Based upon the foregoing, we find that a reasonable trier of fact could find that Kmart based its decision to terminate Grew on a "'prohibited intent to retaliate' [against her for requesting maternity leave] or to prevent the use of benefits . . . . ." *Isbell*, 418 F.3d at 796.

Kmart has provided that Grew was terminated because of a RIF, which is a non-discriminatory reason for terminating Grew. Accordingly, the burden shifts to Grew to show that this purported reason is pretextual. *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1998). As we found earlier in this opinion, Grew has shown that the reason given by Kmart for her termination could be found by a reasonable trier of fact to be pretextual because Grew had received good reviews and was "meeting expectations" prior to her termination. (D's Resp. P's SAF Par. 21). Accordingly, we deny Kmart's motion for summary judgment on Count V.

## CONCLUSION

Based on the foregoing, we deny Kmart's motion to strike, deny as moot Grew's motion to strike portions of Kmart's response to her statement of additional facts, and grant Grew's motion to strike portions of Kopp's affidavit. We also grant in part and deny in part Kmart's motion for summary judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 22, 2006